UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

GIORGI BULEISHVILI,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

20-CV-5626 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Petitioner Giorgi Buleishvili filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel. In his petition and subsequent letters, Buleishvili raises three grounds for relief: (1) his attorney failed to inform him that he had a limited period of time in which to file an appeal; (2) his attorney failed to advise him that his guilty plea and conviction would result in his automatic deportation; and (3) his attorney failed to present to the Court Petitioner's objection to the restitution award imposed. For the reasons provided below, the petition is DENIED.

## BACKGROUND

    Petitioner is a citizen of the Republic of Georgia. Dkt. 15 (Letter from Petitioner's former Counsel, dated Nov. 11, 2020).[1] On January 31, 2017, Petitioner pled guilty to conspiracy to commit mail fraud, wire fraud, and health care fraud under 18 U.S.C. § 1349. *See United States v. Lipkin et al.*, 14-CR-773 (RA), Dkt. 310 (Transcript from Plea Hearing, Jan. 31 2017). At the plea hearing, Petitioner engaged in the following colloquy with the Court:

---

[1] Unless otherwise noted, citations to the record refer to the record in *Buleishvili v. United States of America*, 20-CV-5626 (RA).

> THE COURT: Are you a United States citizen? You are not, correct?
> THE DEFENDANT: I'm not. I'm not.
> THE COURT: Then you should understand as a result of your guilty plea, you may be removed from the United States. In certain circumstances removal may be likely or even mandatory. Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that in the future you may be denied citizenship or even admission into the United States?
> THE DEFENDANT: Yes, I do.
> THE COURT: Did you discuss the possible immigration consequences of your plea with your attorney?
> THE DEFENDANT: Yes.

*Id*. at 9. On July 6, 2017, the Court sentenced him to 34-months imprisonment and a three-year supervised release term. *See Lipkin.*, 14-CR-773 (RA), Dkt. 388 (Transcript from Sentencing, July 6, 2017). At the sentencing hearing, the Court noted that "it is very likely that this conviction is going to result in a deportation." *Id*. at 15. At this hearing, the Court also informed Petitioner that he had "a right to appeal [his] conviction and sentence except to whatever extent [he] may have validly waived that right as part of [his] plea agreement." *Id*. at 24. The Court told Petitioner that if he did "choose to appeal, the Notice of Appeal must be filed within 14 days of the judgment of conviction." *Id*.

Also on July 6, 2017, the Court entered an Order requiring Petitioner to pay "pay restitution in the total amount of $13,795,268 to the victims of the offense charged in the Indictment." *Lipkin.*, 14-CR-773 (RA), Dkt. 382 (Restitution Order). Petitioner had previously agreed to pay restitution. Transcript from Plea Hearing at 11.

On February 26, 2020, nearly three years after he was sentenced, Petitioner filed a motion for leave to file late notice of appeal. Dkt. 1 (Petition). In the letter, he asserted that his "former counsel never told [him] that [he] could appeal [his] conviction" and that by the time he learned of this right, the 14-day deadline to file a notice of appeal had passed. *Id*. at 2. In response, the Court filed an order informing Petitioner that the Federal Rules of Appellate Procedure did not allow for such a late notice of appeal, but offering to treat his motion as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *Id*. at 4–6. Petitioner consented to this recharacterization of his motion. Dkt. 4. On

2

July 2, 2020, he filed a letter with the Court supplementing his initial claim with a claim that his "former criminal defense lawyer failed to provide [him] with good immigration advice about the impact of [his] guilty plea" and "never told [Petitioner] that if [he] plead guilty then [he] would be subject to automatic deportation." Dkt. 7 (Supplemental Letter). He also asserted in this letter—for the first time—that he wished to challenge the amount of restitution imposed. *Id*. According to Petitioner, he disagreed with the restitution amount imposed because, in his words, "I have never seen $100,000 in my life. I don't earn a lot of money and I have three kids and a wife to feed." *Id*. He claims he shared this information with his lawyer, but his lawyer told him that "it was just a number" and "the amount of restitution did not matter [because] no one ever pays" it. *Id*.

After Petitioner filed several letter motions requesting the appointment of pro bono counsel, *see*, *e.g.*, *Lipkin*, 14-CR-773 (RA), Dkts. 470, 472, 474, 477, the Court appointed counsel to represent him on July 24, 2020, Dkt. 10. On November 11, 2020, Petitioner's pro bono attorney informed the Court that he could not file a memorandum of law in support of Petitioner's § 2255 petition because Petitioner's claims were belied by the facts in the record and his arguments were foreclosed by the relevant case law. Dkt. 15. In response, the Court granted Petitioner 45 additional days to file his own memorandum of law, should he wish to file one. Dkt. 16. When Petitioner did not do so, the Court extended his deadline an additional six weeks. Dkt. 18. To date, Petitioner has filed no additional submissions in support of his motion to vacate, set aside, or correct his sentence.

## LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Where, as here, a petitioner appears *pro se*, "the Court construes the Petition and his other submissions

3

liberally and interprets them to raise the strongest arguments that they suggest." *Agramonte v. United States*, 16-CV-6678 (KMK), 2020 U.S. Dist. LEXIS 54181, 2020 WL 1445651, at *3 (S.D.N.Y. Mar. 25, 2020).

## DISCUSSION

Petitioner argues that his trial counsel provided ineffective assistance, depriving him of his Sixth Amendment right to counsel by not: (1) informing him that he had a limited period of time in which to file an appeal; (2) advising him that his guilty plea and conviction would result in his likely deportation; and (3) challenging the restitution awarded. Petition at 2, Supplemental Letter at 1.

To establish a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was objectively unreasonable under "prevailing professional norms," and (2) that counsel's deficient performance was prejudicial to his case. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where the challenge is to a guilty plea, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002) (alteration omitted) (citation and quotation marks omitted), *abrogated on other grounds by Padilla v. Kentucky*, 599 U.S. 356 (2010). "In the sentencing context, a petitioner must demonstrate that but for counsel's ineffective assistance, a different sentence was probable." *Agramonte*, 2020 WL 1445651 at *4 (citing *United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997)).[2]

---

[2] In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (holding that a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible"). Because the record clearly demonstrates that Petitioner was informed of the deadline to file a notice of appeal and the potential immigration consequences of his conviction, and that he agreed to restitution, the Court concludes that no hearing was necessary in this case.

Even accepting as true Petitioner's assertion that his trial counsel did not advise him of the immigration consequences of his conviction or the limitations on his time to file an appeal, the record unambiguously reflects that the Court informed him of both of these facts. Before accepting his plea, the Court informed Petitioner that "as a result of [his] guilty plea, [he] may be removed from the United States. In certain circumstances removal may be likely or even mandatory." Transcript from Plea Hearing at 9. Petitioner responded that he understood these potential consequences to his plea, *id.*, then pled guilty nonetheless, *id.* at 17. Upon sentencing Petitioner, the Court informed him that he had a right to appeal his conviction and sentence but that if he did "choose to appeal, the Notice of Appeal must be filed within 14 days of the judgment of conviction." Transcript from Sentencing at 24.

Because Petitioner confirmed that he fully understood the possible immigration consequences of pleading guilty before doing so, the Court finds no grounds on which to conclude that Petitioner would have insisted on going to trial had his attorney told him of these consequences. *See Agramonte*, 2020 WL 1445651 at *6 ("Petitioner fully understood the immigration consequences from pleading guilty, leaving no room for the argument that he would have made a different decision than the one he did.").[3]

Similarly, because Petitioner was explicitly told by the Court that he had fourteen days to file a notice of appeal, there is no reason to conclude that he would have filed a timely appeal if not for his attorneys' failure to inform him of the deadline.

Petitioner's challenge to the restitution award likewise lacks merit. He avers that he told his lawyer that he "d[id] not want to be liable for [$13,795,268 in] restitution" because he "do[es not] earn a lot of money and [has] three kids and a wife to feed." Supplemental Letter at 1. To the extent that he is now arguing that his attorney erred in not challenging the restitution award on these grounds, this argument fails because economic hardship is not an available grounds on which the restitution award

---

[3] To the extent that Petitioner is now arguing that he was misled by the Court's statement that deportation would be "likely" rather than "mandatory," Second Circuit case law dictates that this is not grounds to grant a § 2255 motion. *See Rojas v. United States*, 803 F. App'x 526, 528–29 (2d Cir. 2020) (summary order).

5

could have been reduced. *See Mazzola v. United States*, 02-CV-7320 (RCC), 2004 U.S. Dist LEXIS 16006, *16–17 (S.D.N.Y. Aug. 12, 2004) ("Petitioner cannot establish that the amount of restitution imposed would have been any different had her counsel raised her economic condition to the Court. The [Mandatory Victims' Restitution Act] does not permit the Court to reduce the amount of restitution owed to the victims of Petitioner's conspiracy."). In any event, Petitioner agreed to pay restitution at the time he pled guilty. Transcript from Plea Hearing at 11.

Accordingly, Petitioner has not established that prejudice resulted from the alleged errors of his attorney, and he thus cannot sustain a claim of ineffective assistance of counsel. His petition is thus denied. 28 U.S.C. § 2255(a).

## CONCLUSION

Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk of Court is respectfully directed to mail a copy of this order to Petitioner and to close this case.

SO ORDERED.

Dated: May 7, 2021
        New York, New York

                                             RONNIE ABRAMS
                                             United States District Judge